UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CRIMINAL ACTION NO. 18-53-DLB-CJS-1

UNITED STATES OF AMERICA                                                                 PLAINTIFF

v.               **MEMORANDUM OPINION AND ORDER**

QUINN R. TURNER                                                                          DEFENDANT

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon Defendant Quinn Turner's Motion for New Trial based on the false testimony of a Government witness. (Doc. # 247). The Government has responded in opposition (Doc. # 251), and Turner has replied (Doc. # 252). The Motion is now ripe for the Court's review. For the reasons set forth below, Turner's Motion is **denied**.

In fall 2018, police used a confidential informant to arrange a purchase of approximately one pound of methamphetamine from Defendant Laura West in Verona, Kentucky. (Doc. # 241 at 15-16). On October 3, 2018, West travelled from Louisville to the site of the purported drug deal with Defendant Turner and his girlfriend, Shiera Brown. (Doc. # 241 at 26-27). Upon arrival, the three were greeted by police officers, who proceeded to search the car. (Doc. # 241 at 29). In the glove compartment, officers found the methamphetamine and a firearm. (Gov't Exs. 5-9, 5-10, 5-11, and 5-12). Turner, who had been driving the car, possessed the key to the glove compartment, which was part of the same key fob that contained the ignition key. (Doc. # 241 at 29; Gov't Ex. 5-7). West, Turner, and a third Defendant, Ashley Daugherty, were arrested and charged

1

with drug and firearm offenses. (Docs. # 56 and 241 at 51). West pleaded guilty and agreed to testify at Turner's trial in exchange for the Government's recommendation of a reduced sentence. (Doc. # 34 at 3).

At Turner's trial, West testified that she had been a heroin user around the time of her arrest and that she sold methamphetamine to fund her addiction. (Doc. # 241 at 4, 6-7). West stated that Turner owned the methamphetamine found in the glove compartment and planned to sell it for $5,600. (Doc. # 241 at 17). In return for locating the buyer, West would receive from Turner $400 and the benefit of transportation from Louisville to Northern Kentucky. (*Id.* at 17). In support of West's testimony, the Government put into evidence numerous text messages between West and Turner leading up to their arrests showing the two negotiating about how to divide the proceeds from the drug deal. (Doc. # 241 at 48-49; Gov't Ex. 7E at 1-6). In addition, text messages between Turner and Daugherty established that Turner regularly sold drugs, including methamphetamine, in the Louisville area and would routinely possess firearms for protection. (Gov't Ex. 7F at 10-12, 27-28). Numerous pictures and videos were presented to the jury showing Turner in possession of substantial amounts of cash. (*See, e.g.*, Gov't Exs. 7B and 7D at 1-2).

Based on this evidence, the jury convicted Turner of conspiracy to distribute methamphetamine, possession with intent to distribute methamphetamine, possession of a firearm in furtherance of drug trafficking, and being a felon in possession of a firearm. (Doc. # 207).

Shortly after the conclusion of trial on September 25, 2020, West's probation officer learned that a skin patch placed on West on September 14, 2020 (one day before the

start of trial) and removed on September 21, 2020 (the Monday following the trial), tested positive for methamphetamine and amphetamines. (Doc. # 251-1 at 1, 3). This positive drug test revealed that West had not been truthful at trial about her drug use; West told the jury that she had been "clean" since her arrest in 2018. (Doc. # 241 at 106). Counsel for the prosecution became aware of the positive drug test on October 1, 2020 and promptly notified Turner's counsel. (Docs. # 251-1 at 1 and 251-4 at 1). At her sentencing, West admitted to having testified falsely at trial about her drug use but did not recant any of her testimony incriminating Turner. (Doc. # 253 at 20-21).

On October 14, 2020, Turner filed a Motion for Release of *Brady* materials, in which he requested that the Court "order the United States to produce any and all prior positive drug tests taken by Laura West while the case United States v. Quinn Turner was pending." (Doc. # 234 at 1). The Court denied that Motion as moot because Turner did not contest the Government's representation that it had turned over the one and only positive drug test for West. (Doc. # 242 at 2). An e-mail from United States Probation Officer Brittany Cardin confirms that West has tested positive for narcotics only once while under supervision. (Doc. # 251-2).

Turner then filed the instant Motion for New Trial. (Doc. # 247). In his Motion, Turner argues that "[t]he exposure of this false testimony by Laura West, which formed the core of the government's case against Quinn Turner at trial, necessitates a new trial." (*Id.* at 5). The Government has responded in opposition. (Doc. # 251). Although conceding that West testified falsely about her drug use, the Government maintains that the false testimony amounts to nothing more than cumulative impeachment evidence and that, had it been shared with the jury, the evidence would not have changed the outcome

of the trial.  (*Id.* at 5).

At the outset, the parties dispute the governing legal standard.  The Government argues for the application of the standard set forth in *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982), which requires a showing that evidence discovered after trial be "[1] material and not merely cumulative or impeaching, and [2] would likely produce an acquittal if the case were retried." (Doc. # 251 at 4-5).  Turner, on the other hand, argues for a less demanding standard, applicable in situations where a trial witness later recants her testimony.  (Doc. # 247 at 5).  This latter standard, articulated in *Gordon v. United States*, 178 F.2d 896 (6th Cir. 1949), and restated in *United States v. Willis*, 257 F.3d 636 (6th Cir. 2001), provides that a witness's false testimony warrants a new trial if, without the false testimony, "the jury might have reached a different conclusion." *Willis*, 257 F.3d at 643 (quoting *Gordon*, 178 F.2d at 900).  As summarized by the Sixth Circuit in *Willis*, "[w]hereas the *Barlow* test holds that newly-discovered evidence can merit a new trial only if that evidence would *likely* produce an acquittal if the case were retried, the *Gordon* test permits a new trial motion to be granted if, without the recanting witness's testimony, the jury *might* have reached a different conclusion." *Willis*, 257 F.3d at 647 (internal citations, alterations, and quotation marks omitted).

The Court need not resolve this dispute because Turner's Motion falls short under either standard.  Put simply, the revelation about West's drug use is not material because it does not implicate West's testimony that Turner owned the methamphetamine and firearm found in the glove compartment.  Rather, the sole effect of this evidence is that it undermines West's credibility, a fact Turner effectively admits when he argues that "[h]ad the defense been able to cross-examine Ms. West with the drug screen results, the jury

4

would have believed the defense—that Ms. West was not truthful and was lying to help herself."  (Doc. # 252 at 4).  The Sixth Circuit has held numerous times that "[m]ere impeachment evidence ... is not sufficient to warrant a new trial." *United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009); *accord, e.g.*, *United States v. Smith*, 395 F. App'x 223, 233 (6th Cir. 2010); *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001).

Moreover, this impeachment evidence is cumulative.  Turner's counsel at trial provided numerous reasons for the jury not to credit West's testimony, including her agreement to testify in exchange for leniency from the Government, her criminal history, and her previous use of a false name to avoid detection by law enforcement.  (Doc. # 241 at 53-54, 58-59, 94-98).  In light of the considerable impeachment evidence presented at trial, it is difficult to see how the evidence of West's false testimony regarding her drug use would have swayed the jury.

Even assuming West's false testimony would have hurt her credibility, there was ample evidence at trial to corroborate her account that Turner was the supplier of the methamphetamine.  In a recorded phone call played to the jury, West is heard telling the confidential informant that her "other dude," referring to Turner, would be receiving $5,200 from the deal.  (Doc. # 241 at 23; Gov't Ex. 6A).  Text messages recovered from Turner's phone show negotiations between him and West on October 3rd about how to distribute the proceeds from the anticipated drug deal, including a message from West to Turner that reads, "52 to you and let's head there now-ish."  (Doc. # 241 at 49; Gov't Ex. 7E at 1).  This evidence, combined with the fact that Turner maintained possession of the key to the locked glove compartment, establish convincingly that Turner was the owner of the methamphetamine and was not, as he argued at trial, merely providing a ride to Laura

5

West for a small fee.

Considering the strong evidence of Turner's guilt and the fact that West's false testimony did not implicate material issues at trial, it cannot be said that the jury might have reached a different conclusion had it been aware of West's false testimony about her drug use.

Finally, Turner requests in the alternative that the Court hold an evidentiary hearing to determine whether the Government knowingly elicited West's false testimony, in violation of the due process principle set forth in *Giglio v. United States*, 405 U.S. 150, 153 (1972). (Doc. # 247 at 7). This request will be denied. First, Turner presents no evidence suggesting that the Government is being dishonest when it states that it did not know about West's drug use during trial. Furthermore, an evidentiary hearing is not required where, as here, the false testimony at trial was not material and "[t]here is ample evidence to support the jury's verdict." *United States v. O'Dell*, 805 F.2d 637, 641, 643 (6th Cir. 1986). Accordingly,

**IT IS ORDERED** that Defendant's Motion for New Trial (Doc. # 247) is hereby **DENIED**.

This 31st day of March, 2021.



Signed By:
*David L. Bunning*
United States District Judge

J:\DATA\ORDERS\Covington Criminal\2018\18-53 MOO Denying Motion for New Trial.docx