UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | Criminal Action No. |
| ) | 2:18-cr-00053-DLB-MAS |
| v. ) | and |
| ) | Civil Action No. |
| QUINN R. TURNER, ) | 2:23-cv-00128-DLB-MAS |
| ) | |
| Defendant/Movant. ) | |
| ) | |

**REPORT & RECOMMENDATION**

This matter is before the undersigned on Petitioner Quinn R. Turner's ("Turner") Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255. Turner argues both his trial and appellate counsel were ineffective he also challenges the legality of one of his firearm convictions. [DE 309]. The United States responded in opposition. [DE 317]. After thoroughly reviewing the record in its entirety, the Court recommends Turner's motion be denied for the reasons stated below.

**I.    RELEVANT BACKGROUND**

In the operative Second Superseding Indictment, Turner was charged with four counts: (1) conspiracy to distribute 50 grams or more methamphetamine in violation of 21 U.S.C. § 846; (2) possession with intent to distribute 50 grams or more methamphetamine in violation of 21 U.S.C. § 841(a)(1); (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and (4)

1

possession of a firearm by a previously convicted felon in violation of 18 U.S.C. § 922(g)(1). [DE 56]. The other two defendants in the case were Laura B. West ("West")[1] and Ashley N. Daugherty ("Daugherty").

Per the Sixth Circuit's opinion, the circumstances leading to these charges took place in the fall of 2018. [DE 299-1, Page ID# 2489-90 (Sixth Circuit Opinion)]. Through a confidential informant ("CI"), law enforcement arranged the purchase of methamphetamine with West. [DE 299-1, Page ID# 2489-90 (Sixth Circuit Opinion)]. On one occasion, the CI agreed to purchase one pound of methamphetamine from West and "her dude" at a Dollar General parking lot. [DE 299-1, Page ID# 2489-90 (Sixth Circuit Opinion)]. West arrived in a Nissan, just as she told the CI, with Turner driving, another woman in the passenger seat, and West in the back seat. [DE 299-1, Page ID# 2489-90 (Sixth Circuit Opinion)]. Upon searching the vehicle that was owned by Turner, law enforcement found a pound of methamphetamine and a firearm in the glove box. [DE 299-1, Page ID# 2489-90 (Sixth Circuit Opinion)].

> Although West pleaded guilty, Turner and Daugherty proceeded to trial.
>
> At trial, both Daugherty and West testified that they acted as intermediaries between Turner (the supplier) and their clients. West testified that Turner was one of two suppliers she used throughout September and October 2018. She was introduced to him by another person, for the sole purpose of obtaining methamphetamine. After their introduction, she procured methamphetamine from him ten times before they were arrested together. At one point, she predicted that they would develop "a great relationship." (Trial Tr., R. 293, PageID 1963.)
>
> The government also presented evidence that Daugherty knew she was participating in a collective venture with Turner. Daugherty testified

---

[1] West pleaded guilty in response to the original Indictment [DE 33] and was not listed as a party in the Superseding Indictment or the Second Superseding Indictment.

2

>that she went with Turner to make sales, and knew he worked with other dealers, including West and a woman named Helen or Ann Hardin. Daugherty often went with Turner to [Sheira] Brown's home, where he kept drugs and at least one gun. West and Daugherty also testified that, on one occasion, Turner used Daugherty to supply drugs to West, rather than transferring them personally. This was Daugherty and West's only interaction.

[DE 299-1, Page ID# 2492 (Sixth Circuit Opinion)].

In the end, the jury convicted Turner on all counts. "As a part of the conspiracy, the jury found that Turner coordinated with Laura West, Ashley Daugherty, Helen 'Ann' Hardin, and Shiera Brown—at a minimum—to further his criminal enterprise. Relevantly, testimony from Turner's coconspirators revealed that Turner sold roughly fourteen pounds of methamphetamine of unknown quality per month between June and October 2018." [DE 299-1, Page ID# 2488 (Sixth Circuit Opinion)].

Turner was eventually sentenced to a total of 300 months imprisonment. [DE 261 (Judgment)]. Turner appealed; his conviction and sentenced was affirmed by the Sixth Circuit. [DE 299 (Sixth Circuit Opinion)]. Turner timely filed this habeas petition on September 22, 2023. [DE 309].

## II.  ANALYSIS

In his petition, Turner asserts six grounds for relief.

The first three grounds as well as the fifth ground argue Turner's trial counsel were ineffective. For Ground 1, Turner argues trial counsel should have filed a motion to dismiss for what he claims are various pleading defects in the Second Superseding Indictment. For Ground 2, Turner alleges trial counsel failed to object to certain jury instructions. In Ground 3 Turner suggests his trial counsel were wrong not to ask for a special jury verdict form. And for Ground 5, Turner claims

3

faults his trial counsel for failing to file a notice of appeal that encompassed his denied request for a new trial.

Ground 4 focuses on his appellate counsel as ineffective for failing to raise the arguments contained in Grounds 1, 2, and 3.

Finally, in Ground 6, Turner argues that his conviction in Count 4 under 18 U.S.C. § 922(g)(1) is unconstitutional considering the Supreme Court's recent ruling in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

The Court will address the claims of ineffective assistance of counsel before turning to the *Bruen* challenge.

A. **INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS FOR TRIAL COUNSEL**

   1. **Legal Standard**

Under § 2255, a federal prisoner may obtain relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A constitutional basis for § 2255 relief requires "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Any non-constitutional error must constitute a

4

"'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990). A § 2255 movant typically must prove any factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

One class of alleged constitutional error is ineffective assistance of counsel in violation of the Sixth Amendment. The standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims. To prevail, a movant must prove (1) that defense counsel's performance was deficient, and (2) that the demonstrated deficiency prejudiced the movant. *Id.* at 687. To establish deficient performance, a movant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. "Judicial scrutiny of counsel's performance must be highly deferential", and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. A prejudice showing requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id.* at 694–95. The Court "must consider the totality of the evidence" in assessing prejudice. *Id.* at 695. The movant must satisfy both prongs of the *Strickland* analysis, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Id.* at 730; *Strickland*, 466 U.S. at 697.

### 2. Ground 1: Pleading Defects

According to Turner, he complains about three different, alleged defects in the Second Superseding Indictment. The Court will take each of these defects in turn.

#### a. *Knowingly and Intentionally*

First, for the charge of conspiracy to distribute methamphetamine, the United States "omit[ted] the mens rea second element of 'knowingly and intentionally' as required by the Sixth Circuit Precedents [*sic*]". [DE 309, Page ID# 2528]. The precedents, however, disagree with Turner.

In *Ruan v. United States*, 142 S.Ct. 2370 (2022), the Supreme Court held that while the United States must prove mens rea beyond a reasonable doubt, "the Government need not refer to a lack of authorization (or any other exemption or exception) in the criminal indictment." *Id.* at 2379. Judge Bunning recently held as much in *United States v. Fletcher*, No. 21-cr-63-DLB, 2023 WL 4097026 (E.D. Ky. June 20, 2023). There, Fletcher sought dismissal of the indictment charging him with drug distribution because the United States did not include the phrase "knowingly and intentionally." Relying upon *Ruan*, Judge Bunning denied the motion. "If the United States need not reference Fletcher's lack of authorization in an indictment, then it logically follows that the United States is also not required to allege the associated mens rea—that he knowingly and intentionally acted in an unauthorized

manner. Therefore, the United States is not required to specifically allege here that Fletcher knew or intended that his prescriptions were unauthorized." *Id.* at *4.[2]

These holdings are consistent with prior Sixth Circuit rulings. *United States v. Edington*, 526 F. App'x 584, 588 (6th Cir. 2013) (citing *United States v. Lentsch*, 369 F.3d 948, 953 (6th Cir. 2004) (holding that even if language in the indictment is "somewhat imprecise, this does not render [the indictment] insufficient," if it sets "forth the critical details of the offense charged."); *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992) (holding that an indictment that omitted the mens rea element was sufficient because it cited the applicable statutes, which informed the defendant of the elements of the charged offense).

To prove his trial counsel deficient, Turner must "prove that counsel's representation was not merely below average, but rather that it 'fell below an objective standard of reasonableness." *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). Courts "employ a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689); *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Here, Turner's trial counsel are not deficient for raising an argument that has no legal merit. *United States v. Martin*,

---

[2] Judge Bunning noted that while Fletcher's charge of distribution did not include the mens rea language, his conspiracy charge did. *Id.* at *5. Judge Bunning reasoned that, at minimum, because the mens rea is included in a related count, Fletcher was on notice. *Id.* The same is also true, albeit reversed, for Turner. While the charge of conspiracy against Turner does not include the mens rea language, the related charge of distribution in Count 2 does include the mens rea language. [DE 56, Page ID# 235].

7

45 Fed. App'x. 378, 381 (6th Cir. 2002) (discussing that one's counsel cannot provide deficient performance by failing to raise wholly meritless claims) (citing *Strickland v. Washington, supra* at 688). Thus, the Court should reject Turner's argument on this point.

### b.   *Notice of Conspiracy*

Second, Turner argues that the charge of conspiracy "fails to put him on **NOTICE** as to who Quinn R. Turner's two or more individuals in which he conspired with to commit an unlawful act." [DE 309, Page ID# 2528-29 (emphasis in original)].[3]

As with the prior claim, precedent disagrees. Generally, defendants are not entitled to require, through a bill of particular or other means, that the United States disclose each and every member of a conspiracy to a defendant. *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991); *see also United States v. Page*, 575 Fed. App'x 641, 643 (6th Cir. 2014) (observing that "the government is not obliged to provide the names of a defendant's alleged co-conspirators").

> A defendant may be indicted and convicted despite the names of his co-conspirators remaining unknown, as long as the government presents evidence to establish an agreement between two or more persons, a prerequisite to obtaining a conspiracy conviction. As long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators. "It is the grand jury's statement of the 'existence of the conspiracy agreement rather than the

---

[3] Turner similarly complains that "Count 2 of Superseding Indictment PWID Aiding & Abetting fails to put him on NOTICE of who he aided and abetted with". [DE 309, Page ID# 2529]. Upon review, however, the Second Superseding Indictment does not charge him with aiding and abetting. Rarther, the charge is for possession with intent to distribute methamphetamine. [DE 56, Page ID# 234-35]. Thus, the Court need not address this argument.

8

identity of those who agree' which places the defendant on notice of the charge he must be prepared to meet."

*Id.* (internal citations omitted) (quoting *United States v. Piccolo*, 723 F.2d 1234, 1239 (6th Cir. 1983)). Thus, the United States is not required to reveal the names of unindicted coconspirators. *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004).

And Turner's trial counsel is not deficient, as detailed above, for not raising an argument that lacks legal merit. The Court should likewise dismiss Turner's arguments on this point.

### c. *Unlawful Possession of Firearm*

Finally, Turner claims that the Second Superseding Indictment, in charging him with being a convicted felon in possession of a firearm, "omits the required statutory language of 'unlawfully' and omits a relevant section of the 'jurisdictional element' more specifically that: 'to ship or having previously traveled' as required by 18 U.S.C. 922(g) and (g)(1)." [DE 309, Page ID# 2529].

The statute reads "[i]t shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition[.]" 18 U.S.C. § 922(g)(1). The term unlawful is not an element the United States must prove at trial or even allege in an indictment. The word merely sets forth that the elements of 922(g)(1), when met, result in unlawful conduct.

"The indictment ... must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements

of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001). Count 4 plainly charges Turner "had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, that is, a felony, did knowingly possess in and affecting interstate and foreign commerce a firearm, to wit, a Smith & Wesson, Model M&P Bodyguard, .380 caliber pistol, bearing serial number KCU0884, all in violation of 18 U.S.C. § 922(g)(1)." [DE 56, Page ID# 235 (Second Superseding Indictment)]. From this, Turner was fully aware of the charge pending against him. Any motion made by Turner's trial counsel alleging the Court should dismiss Count 4 for failing to include the word "unlawful" would have been entirely without merit. Once more, Turner's trial counsel is not deficient for making meritless arguments.

### 3.     Ground 2: Challenged Jury Instructions

For his second ground, Turner argues his trial counsel was ineffective for failing to object when the Court instructed the jury that Count 1 required proof that Turner "knowingly and voluntarily joined the conspiracy." [DE 309, Page ID# 2531-33]. This argument is the extension of Turner's prior argument in Ground 1 complaining the Second Superseding Indictment omitted the language "knowingly and intentionally." When the Court provided that instruction, Turner claims that the Court's instruction created "a Constructive Amendment and/or Fatal Variance" correcting the alleged error in the Second Superseding Indictment. [DE 309, Page ID# 2531-33].

The Sixth Circuit rejected this very argument in *United States v. McReynolds*, 964 F.3d 555 (6th Cir. 2020). There, McReynolds claimed "that his indictment was insufficient for failing to include every element of the charged offense, and he argues that the jury instructions constructively amended the indictment." *Id.* at 561. Initially, the Sixth Circuit rejected McReynolds' challenge of the indictment itself on the same grounds this Court did above with Turner. The Sixth Circuit then turned to the issue of the jury instruction.

> McReynolds' argument that the jury instructions constructively amended the indictment is likewise unavailing because it is premised on the same reasoning rejected above. "The Fifth Amendment guarantees that an accused be tried only on those offenses presented in an indictment and returned by a grand jury." *United States v. Chilingirian*, 280 F.3d 704, 711 (6th Cir. 2002). A constructive amendment occurs "when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Siemaszko*, 612 F.3d 450, 469–70 (6th Cir. 2010) (quoting *United States v. Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008)). McReynolds argues that the jury instructions constructively amended the indictment because the instructions asked the jury to determine, in part, whether McReynolds "knowingly and voluntarily joined" the conspiracy, while the indictment did not include this element. Because the indictment sufficiently charged this element of the offense as discussed above, we reject McReynolds' contention that the jury instructions constructively amended it.

*Id.* at 562.

The same logic of *McReynolds* that foreclosed Turner's argument that the Second Superseding Indictment was deficient for omitting "knowingly and intentionally" also forecloses his challenge as to the jury instruction. The logic is

11

sound and well grounded. For those reasons, the Court recommends dismissal of Turner's claims on this ground.

### 4.     Ground 3: Special Jury Verdict Form

Turner's next argument concerns the jury instructions. For context, the jury instructions used at Turner's trial asked the jury to determine the quantity of methamphetamine Turner trafficked. Specifically, for both Count 1 and Count 2, the jury instructions charged the jury to determine "the amount of methamphetamine that was attributable" to Turner. [DE 207, Page ID# 785-86 (Verdict Form)]. For both counts, the jury returned a verdict that attributed "50 grams or more of methamphetamine" to Turner. [DE 207, Page ID# 785-86 (Verdict Form)]. Turner argues that his trial counsel should have challenged the jury instructions "to include the maximum drug amount in which the Conspiracy [*sic*] involved that would be attributed to Mr. Turner in [*sic*] would have impacted him during the sentencing phase". [DE 309, Page ID# 2535]. After careful review, Turner's argument is misguided.

In support of his argument, Turner cites *United States v. McReynolds*, 964 F.3d 555 (6th Cir. 2020). However, this precedent does not support Turner. In *McReynolds*, the Sixth Circuit examined whether the district court could attribute to McReynolds at sentencing the entire drug amount attributed to the entire conspiracy. *Id*. at 563-66. In rejecting this approach, the Sixth Circuit noted that while a district court could depart from the drug quantities determined by a jury, the district court could only do so through a preponderance of evidence. *Id*. at 565-66. In other words, the Sixth Circuit in *McReynolds* was not commenting on the propriety of any jury

instructions but simply the impact of jury determined drug quantities on the sentencing phase. And the Sixth Circuit certainly never suggested that a jury instruction need include a maximum drug amount as suggested by Turner.

Rather, the Supreme Court and Sixth Circuit have made clear that a jury instruction must merely include instructions that would increase the statutory maximum. "*Apprendi* [*v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)] requires that all facts that increase the penalty for a crime beyond the statutory maximum be submitted to a jury and proved beyond a reasonable doubt." *United States v. Brown*, 332 F.3d 363, 369 (6th Cir. 2003). Thus, with Turner, the only legal necessity is that jury instructions include a question asking if Turner had "50 grams or more of methamphetamine" as that would trigger a higher statutory ceiling for sentencing. [DE 207, Page ID# 785-86 (Verdict Form)]. "A conspiracy conviction 'does not mean that a jury need return a special verdict describing the precise amount of drugs involved in the conspiracy. It is enough that the jury supportably determines, beyond a reasonable doubt, that the conspiracy involves a drug quantity that surpasses the threshold amount.'" *United States v. Grooms*, 194 Fed. App'x 355, 364 (6th Cir. 2006) (quoting *Derman v. United States*, 298 F.3d 34, 43 n. 4 (1st Cir. 2002)).

The jury instructions presented in Turner's case conformed with the requirements set forth in *Apprendi* and other precedents. There is no requirement to include a maximum or ceiling amount of drug quantity involved. If trial counsel for Turner made that argument, it would have no legal footing and no prejudice on

13

Turner. As already set forth, counsel is not deficient for making an argument without merit. *United States v. Martin*, 45 Fed. App'x. 378, 381 (6th Cir. 2002) (discussing that one's counsel cannot provide deficient performance by failing to raise wholly meritless claims) (citing *Strickland v. Washington*, *supra* at 688).

   5.   **Ground 5: Notice of Appeal**

Turner's final complaint against his trial counsel is that they failed "to include with his Notice of Appeal that []Turner was also appealing the denial of his Rule 33 Motion for New Trial." [DE 309, Page ID# 2540]. Trial counsel filed the Notice of Appeal concerning "the final judgment" on the same date as the entry of the Judgment against Turner. [DE 262].

As the United States indicated in its response, "the law is well settled that an appeal from a final judgment draws into questions all prior non-final rulings and orders." *McLaurin v. Fischer*, 768 F.2d 98, 101 (6th Cir. 1985). Indeed, if trial counsel had specified Turner's Motion for New Trial as Turner suggests, such a notice of appeal might be more problematic. "If an appellant [] chooses to designate specific determinations in his notice of appeal—rather than simply appealing from the entire judgment—only the specified issues may be raised on appeal." *Id.* at 102. By appealing the entire final judgment, trial counsel preserved any and all issues for Turner to raise on appeal.

Turner's final complaint against his trial counsel are without merit.

B.   **INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL CLAIM**

"[I]neffective assistance of appellate counsel claims are governed by the same *Strickland* standard as claims of ineffective assistance of trial counsel." *Shaneberger*

14

*v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)). Thus, while the focus now turns from Turner's trial counsel to his appellate counsel, the legal framework remains the same.

### 1. Ground 5: Arguments Raised On Appeal

In his fifth ground, Turner claims that his appellate counsel should have raised on appeal the arguments set forth in Grounds 1, 2, and 3 discussed above. However, as already detailed above, those arguments lack any legal footing. And the fact that appellate counsel did not raise these meritless arguments is not a suggestion of ineffective assistance of counsel. Rather, appellate counsel's choice to focus on better arguments is to Turner's benefit. "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52) (1983). The Court should deny Turner's request on this ground.

### C. LEGAL CHALLENGE TO COUNT V OF THE SECOND SUPERSEDING INDICTMENT

In his sixth and final ground, Turner argues his conviction for possessing a firearm as a previously convicted felon is improper under the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The Court disagrees.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court affirmed that the Second Amendment guarantees

15

the right of a person to possess a handgun in the home for self-defense. In *New York State Rifle & Pistol Assoc. v. Bruen*, the Supreme Court affirmed that the Second Amendment protects "an individual's right to carry a handgun for self-defense outside the home." 597 U.S. 1, 142 S. Ct. 2111, 2122, 213 L.Ed.2d 387 (2022). More importantly, *Bruen* altered how courts should examine the constitutionality of a statute that falls within the scope of activity governed by the Second Amendment. Namely, the Supreme Court rejected means-end scrutiny. *Bruen*, 142 S. Ct. at 2126-27. Rather, the Supreme Court adopted the following standard:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation.

*Id.* at 2129-30.

Under this new framework, Turner now argues his conviction under 18 U.S.C. § 922(g)(1) fails as a matter of law. As the United States details, however, no courts have agreed with Turner's argument as to 922(g)(1).

For example, courts here in the Eastern District of Kentucky have thoroughly analyzed this issue and uniformly rejected constitutional challenges to 922(g)(1) under *Bruen*. *See United States v. Goins*, 647 F. Supp. 3d 358 (E.D. Ky. 2022); *United States v. Davis*, No. 5:19-cr-159-DCR, 2022 WL 18587703 (E.D. Ky. Dec. 29, 2022) (rejecting the challenge in the context of a habeas petition); *United States v. Wilkins*, No. 5:22-cr-16-GFVT, 2023 WL 6050571 (E.D. Ky. Sept. 15, 2023); *United States v. Brooks*, No. 23-cr-26-DLB, 2023 WL 6880419 (E.D. Ky. Oct. 18, 2023); *United States v. Starghill*, No. 7:19-cr-5-KKC, 2023 WL 7385777 (E.D. Ky. Nov. 8, 2023) (rejecting

16

the challenge in the context of a habeas petition). Although the Sixth Circuit has yet to weigh in on the issue, every Circuit that has examined the issue has also found 922(g)(1) constitutional. *See, e.g., Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023); *United States v. Cunningham*, 70 F. 4th 502 (8th Cir. 2023); *United States v. Jones*, No. 23-10198, 2023 WL 8074295, at *1 (5th Cir. Nov. 21, 2023) (per curiam published opinion); *Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023). The only circuit decision to reject 922(g)(1) was the Third Circuit in *Range v. Attorney General United States of America*, 69 F.4th 96 (3d Cir. 2023). However, the Third Circuit only held that 922(g)(1) was unconstitutional as applied to Range (previously convicted of a felony related to food stamp theft), not generally unconstitutional.

In short, the current legal landscape does not support Turner's argument that the holding in *Bruen* results in finding 922(g)(1) unconstitutional. In fact, it's just the opposite. The Court should deny Turner's petition on this ground.

D.  **REQUEST FOR A HEARING**

In his reply, Turner requests an evidentiary hearing. [DE 321, Page ID# 2724]. The Court must conduct an evidentiary hearing on Turner's claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). *See also* Rule 8(a) of the Rules Governing Section 2255 Cases in the United States District Courts (directing the Court to examine the filings and record "to determine whether an evidentiary hearing is warranted"). The Court must hold a hearing where the petitioner raises a factual dispute underlying his claims, though "[t]he burden for establishing an entitlement to an evidentiary hearing is relatively light[.]" *Martin v. United States*, 889 F.3d 827,

17

832 (6th Cir. 2018).  However, "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact[,]" no evidentiary hearing is required.  *Id*.  The arguments presented by Turner in all six grounds are based in law, not fact.  To the extent the Court examined the record, Turner made no allegation to dispute the record in his petition.  Accordingly, the Court does not find a hearing is necessary.

### III.    CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255).  In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id*.

Turner has asserted six grounds for relief, the first five of which are claims for ineffective assistance of counsel.  The first ground argued trial counsel should have challenged various pleading deficiencies.  However, the Sixth Circuit has plainly held such perceived errors as harmless.  The second ground similarly attacked the jury instructions for supposedly correcting pleading errors.  Again, the Sixth Circuit has rejected this argument as well.  The third ground asked trial counsel to seek a special

18

jury verdict instruction, but there was no legal authority for such a request. The fourth claim argued appellate counsel should have raised the first three grounds on appeal, but appellate counsel is not obligated to raised arguments that have no legal merit. The fifth claim suggested trial counsel should have filed a more targeted notice of appeal. Such a request would have done more harm than good for Turner. And finally, Turner challenges one of his firearm convictions under *Bruen*. As the Court detailed, there is no current legal support for such a challenge.

Accordingly, it is **RECOMMENDED** that a certificate of appealability be **DENIED** upon the District Court's entry of its final order in this matter.

## IV.    CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS**:

1)    The District Court **DENY**, with prejudice, Turner's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 [DE 309]; and

2)    The District Court **DENY** a certificate of appealability as to all issues, should movant request a COA.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of

Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

    Entered this the 13th day of February, 2024.

*signature*

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY